UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUSAN BATTAGLIA,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00390 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Susan Battaglia ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted in part, the Commissioner's motion (Dkt. 15) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for DIB on May 21, 2014. (Dkt. 7 at 20).[1] In her application, Plaintiff alleged disability beginning January 18, 2011, due to severe lumbar pain with degenerative disc disease. (*Id.* at 170, 173). Plaintiff's application was initially denied on May 14, 2014. (*Id.* at 89-92). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger in Buffalo, New York, on February 3, 2017. (*Id.* at 34-77, 93). On March 31, 2017, the ALJ issued an unfavorable decision. (*Id.* at 17-33). Plaintiff requested Appeals Council review; her request was denied on January 31, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. (Dkt. 7 at 22). At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity from January 18, 2011, the alleged onset date, through her date last insured of December 31, 2016. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of chronic back pain and disorders of the right wrist. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of right knee disorder, right elbow pain, GERD, and hypertension were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). The ALJ particularly considered the criteria of Listings 1.02 and 1.04 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff:

> could frequently reach overhead to the left, and frequently reach overhead to the right. For all other reaching, she could reach frequently to the left, and could reach frequently to the right. [Plaintiff] could never climb ramps and stairs, never climb ladders, ropes, or scaffold, balance occasionally, never stop, never kneel, never crouch, and never crawl.

(*Id.* at 23). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. (*Id.* at 26).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the representative occupations of

food checker, timekeeper, and telephone information clerk. (*Id.* at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date last insured. (*Id.* at 28).

## II. Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alterative, remand this matter to the Commissioner, arguing that the ALJ failed to properly assess Plaintiff's age for purposes of applying the Medical-Vocational Guidelines. (Dkt. 12-1 at 10-11). The Court agrees with Plaintiff, for the reasons discussed below.

The Social Security Administration's ("SSA") regulations set forth three age categories: (1) a "younger person," who is under the age of 50; (2) a "person closely approaching advanced age," who is between the ages of 50 and 54; and (3) a "person of advanced age," who is 55 or older. 20 C.F.R. § 404.1563(c), (d), (e). "These age categories are then used in the Medical–Vocational Guidelines (the 'Grids') to make determinations at step five of the [ALJ's disability] analysis." *Woods v. Colvin*, 218 F. Supp. 3d 204, 207 (W.D.N.Y. 2016). As relevant here, an ALJ may not "apply the age categories mechanically in a borderline situation," and, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled," then the ALJ must "consider whether to use the older age category after evaluating the overall impact of all the factors" in the individual case. 20 C.F.R. § 404.1563(b).

Where, as in this case, a claimant has applied only for DIB and the ALJ's decision is issued after the date last insured, the claimant's age category is determined by reference

to the date last insured. *See Woods*, 218 F. Supp. 3d at 207-08 ("[W]hen the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured." (quotation omitted)). Plaintiff was born on April 13, 1967. (Dkt. 7 at 27). As such, on her date last insured of December 31, 2016, she was 49 years and eight months old.

The SSA's regulations do not provide a bright-line definition for what constitutes a borderline age situation. However, as the court in *Woods* noted, the SSA's Hearings, Appeal and Litigation Law Manual (the "HALLEX") provides that "[g]enerally, SSA considers a few days to a few months to mean a period not to exceed six months." 218 F. Supp. 3d at 209 (quoting HALLEX 1-2-2-42). "Most district courts within the Second Circuit follow the HALLEX and hold that a period of up to six months is borderline." *Id.* In this case, Plaintiff was less than six months from her 50th birthday on her date last insured.

Moreover, the ALJ in this case found that Plaintiff was capable only of a range of sedentary work. (Dkt. 7 at 23). As such, had the ALJ treated Plaintiff as a person closely approaching advanced age, she would have been considered disabled under the Grids. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14 (an individual who is closely approaching advanced age, has a high school education, and has past skilled or semi-skilled work without transferable skills is disabled). Under these circumstances, the Court finds that this constituted a borderline situation, as defined in 20 C.F.R. § 404.1563(b).

As Plaintiff correctly noted, the ALJ in this case did not acknowledge or discuss the fact that Plaintiff was on the borderline of a higher age category, nor did he provide any

rationale for why he ultimately decided to treat her as a younger individual. To the contrary, the ALJ's discussion of Plaintiff's age is as follows, in its entirety: "[Plaintiff] was born on April 13, 1967, and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured." (Dkt. 7 at 27). The Court finds this cursory statement by the ALJ wholly insufficient to comply with 20 C.F.R. § 404.1563(b), pursuant to which the ALJ was required to perform an individualized assessment of which age category to apply.

The Court is not persuaded by Defendant's argument that the ALJ's mere recitation of Plaintiff's age somehow constitutes a consideration of her borderline age situation. (*See* Dkt. 15-1 at 17 ("The ALJ was well aware of Plaintiff's age as Plaintiff identified her date of birth in her application and when asked by the ALJ at the hearing. Further, her date of birth was set forth in multiple medical reports in the record reviewed by the ALJ. Most significantly, the ALJ explicitly set forth her date of birth and age in Finding No. 7 in the decision." (internal citations omitted)). It is the obligation of an ALJ to "build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review." *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (quotation and alteration). The ALJ here failed to do so, inasmuch as he provided no explanation whatsoever for how he conducted the assessment required by 20 C.F.R. § 404.1563(b). *See Woods*, 218 F. Supp. 3d at 209 (finding reversible error where the ALJ failed to indicate that he had even "consider[ed] whether using the higher age category would be appropriate").

Defendant also cites several Sixth Circuit cases for the proposition that "[t]here is no *per se* requirement that an ALJ address borderline age categorization in every borderline case, particularly when the record does not show that the claimant suffered any sort of additional vocational adversity." (Dkt. 15-1 at 16). It is true that the Sixth Circuit (as well as the Ninth and Eleventh Circuits) have found that an ALJ need not provide an express discussion of a borderline age situation to satisfy the requirements of 20 C.F.R. § 404.1563(b). *See Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071-72 (9th Cir. 2010); *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635-36 (11th Cir. 2006). However, the Eighth Circuit has expressly rejected the Sixth Circuit's conclusions in this regard, explaining that "it is [the] court's job to review whether substantial evidence exists to support the Commissioner's decision, and [the Court] simply cannot complete this review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do." *Phillips v. Astrue*, 671 F.3d 699, 706 (8th Cir. 2012). "The Courts of Appeal for the Third and Tenth Circuits have [also] held that an ALJ must show in his decision that he has performed the analysis required in a borderline age situation." *Moody v. Berryhill*, 245 F. Supp. 3d 1028, 1034 (C.D. Ill. 2017) (quotation omitted) (citing *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998); *Kane v. Heckler*, 776 F.2d 1130, 1132–34 (3d Cir. 1985)).

The Second Circuit has not yet addressed this issue. However, courts within this Circuit have rejected the argument that an ALJ need not indicate how he decided which age category to apply in a borderline situation, explaining that "because it is not the

province of the court to determine" how to ultimately handle a borderline age situation, remand is necessary where the ALJ "gave no indication that he was even aware of the borderline age issue. . ., much less a rationale for why he decided to use [the claimant's] chronological age, instead of the older age category." *Goncalves v. Berryhill*, No. 3:17-CV-01830 (JCH), 2018 WL 6061570, at *6 (D. Conn. Nov. 20, 2018) (quotation omitted); *see also Metaxotos v. Barnhart*, No. 04 CIV. 3006 (RWS), 2005 WL 2899851, at *8 (S.D.N.Y. Nov. 3, 2005) ("Because the ALJ failed to identify whether this was a borderline situation and failed to address the implications of the timing of her decision, a remand is appropriate.").

Moreover, district courts in several other circuits have also expressly rejected the argument proffered by the Commissioner in this case. *See, e.g., Moody*, 245 F. Supp. 3d at 1034 ("The Court is persuaded by the logic of the Courts of Appeal for the Third and Tenth Circuits, as well as that of our sister district, the Northern District of Illinois, in finding that the ALJ must, at minimum, identify that there was a borderline age situation before determining which age category to use); *Justice v. Astrue*, 589 F. Supp. 2d 110, 112 (D. Mass. 2008) (explaining that "without a record of the hearing officer's reasoning regarding [the claimant's] potential 'borderline age,' it is impossible for this Court to determine that the decision was not made 'mechanically' in violation of Section 404.1563(b)").

This Court agrees with those courts that have found 20 C.F.R. § 404.1563(b) to require, at a minimum, that the ALJ acknowledge the existence of a borderline age situation. Absent such an acknowledgment, this Court (or any other court) cannot make a

reasoned conclusion that the ALJ complied with the regulations and did not apply the age categories mechanically. This case provides a clear example of the downfalls of the approach urged by the Commissioner—the ALJ's decision provides no indication whatsoever that he was even aware that this was a borderline case, much less that he performed the requisite individualized assessment of which age category to apply. Under these circumstances, the Court is left unable to meaningfully review the ALJ's determination.

For all these reasons, the Court finds that the ALJ erred in failing to appropriately apply 20 C.F.R. § 404.1563(b) and that remand of this matter is required.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: August 7, 2019
      Rochester, New York